**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CIV-07-763-PHX-SMM (GEE) |
| Plaintiff-Respondent, | CR-01-1136-PHX-SMM |
| vs. | **REPORT AND RECOMMENDATION** |
| Christian Eduardo Gaybor, | |
| Defendant-Movant. | |

On April 11, 2007, Christian Eduardo Gaybor, an inmate confined at the Federal Correctional Institution in Fort Dix, NJ, filed the instant motion to vacate, set aside or correct sentence pursuant to Title 28, United States Code, Section 2255. [doc. #266][1] Gaybor claims his counsel was ineffective at trial and during pretrial plea negotiations. (Defendant's memorandum.) The government filed a response and Gaybor filed a reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for a report and recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, deny the motion on the merits. Trial counsel was not ineffective.

---

[1] Criminal case document number.

Summary of the Case

Gaybor was tried before a jury for interference with commerce by threats and violence in violation of 18 U.S.C. §§ 1951 and 2 (count 1), and brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924 (c)(1)(ii) and 2 (count 2). (Government's response, p. 2.)   He was found guilty on both counts and sentenced on February 7, 2003 to consecutive terms of 180 months' imprisonment on count 1 and 84 months' imprisonment on count 2. *Id.* He was further ordered to pay $1,129,036.14 in restitution. *Id.*

Gaybor successfully appealed his sentence, and on remand the court sentenced him to consecutive terms of 125 months' imprisonment on count 1 and 84 months' imprisonment on count 2. *Id.*, pp. 2-3. The court ordered Gaybor to pay restitution but neglected to set a specific payment schedule. *Id.*, p. 3. The case was remanded again, and the court ordered Gaybor to pay restitution pursuant to a specific payment schedule. *Id.*

At trial, the following evidence was presented: Gaybor was employed as an armored truck driver with AT Systems. (Government's response, pp. 3-4.) He conspired with four others to rob one of the trucks. *Id.*

On the day of the robbery, Gaybor and his unwitting partner, Hutchinson, drove their armored truck to various stores and made numerous pick-ups as usual. *Id.*, pp. 7-8 After lunch, Gaybor drove to the Home Depot store and sent his partner inside to make a pick-up. *Id.*, p. 9. While Hutchinson was inside the store, Gaybor let his co-conspirators, Moussa and Mascareno, into the armored truck. *Id.* He gave Moussa his sidearm and allowed the two of them to hide. *Id.*

When Hutchinson returned, Gaybor let him into the truck as usual. *Id.*, p. 10. When Hutchinson sat down, he was immediately struck from behind. *Id.* Moussa and Mascareno pointed loaded handguns at Hutchinson's head, took his gun, put a hood over his head, and tied him up. *Id.* Gaybor drove to a near-by grocery store where his co-conspirators, Mathews and Villasaez, were waiting with a van. *Id.* The five men transferred the money to the van. *Id.* Gabor was tied up to conceal his participation in the robbery. *Id.*, p. 11. Then, Moussa, Mascareno, Mathews, and Villasaez left the scene in the van. *Id.*, p. 11.

1  At the trial, co-conspirator Michael Moussa testified for the government. *Id.*, p. 11. He explained he pleaded guilty to counts 1 and 2 and agreed to cooperate with the government because in exchange he hoped to receive a significantly lesser sentence. *Id.*, p. 11.

On April 11, 2007, Gaybor filed the instant motion to vacate, set aside or correct his sentence. He claims counsel was ineffective for (1) failing to properly represent him on the firearm charge where (a) the government failed to prove that the firearm was used, (b) the jury instruction constructively amended the indictment, and (c) counsel committed cumulative errors; (2) failing to challenge the government's mischaracterization of the deal it offered to Gaybor's co-conspirator; and (3) failing to advise Gaybor he could have pleaded guilty without accepting the government's plea agreement.  (Defendant's memorandum.)

The government filed a response arguing the motion should be denied on the merits. Gaybor filed a reply in which he further argues his counsel was ineffective for failing to challenge the government's proof that he knew guns would be used during the robbery.

Discussion

A motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255 provides a remedy for those prisoners

> in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255.

Gaybor argues his trial counsel was ineffective. "The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)), *amended by*, 311 F.3d 928 (9th Cir. 2002). To establish a violation of this right, the defendant must prove "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the defendant "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

- 3 -

1  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."
2  *Id.*

3  "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v.*
4  *Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires
5  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
6  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
7  perspective at the time." *Id.* "Because of the difficulties inherent in making the evaluation, a
8  court must indulge a strong presumption that counsel's conduct falls within the wide range of
9  reasonable professional assistance . . . ." *Id.* (internal citation omitted).

10  In his first claim for relief, Gaybor argues counsel failed to effectively challenge the
11  government's case regarding the firearms charge. In count 2, Gaybor was charged with
12  brandishing a firearm in connection with a crime of violence. At trial, it was the government's
13  contention that Gaybor was guilty of this count on the theory of aiding and abetting.

14  Gaybor argues that while there was evidence his co-conspirator, Moussa, *carried* a rifle
15  into the armored truck in his equipment bag, there was no evidence that he ever *brandished* it.
16  He argues his counsel was ineffective for failing to raise this point. Gaybor's argument about
17  the rifle, however, is beside the point. Count 2 was proven by other evidence.

18  In the superseding indictment, Gaybor and his co-conspirators are charged with
19  brandishing handguns during and in relation to a crime of violence. (doc. # 14.) At trial,
20  Hutchinson and Moussa testified that after Hutchinson was hit from behind, both Moussa and
21  Mascareno pointed handguns at his head. (Government's response, p. 10.) These were the
22  firearms that were brandished in count two, not the rifle that Moussa carried into the truck. It
23  is irrelevant whether or not Moussa brandished the rifle he carried in his equipment bag.
24  Counsel's failure to highlight the fact that the rifle was not brandished was not deficient
25  performance.

1  In his reply, Gaybor argues there was no evidence he knew guns would be used during the robbery.[2] The trial record, however, contains sufficient evidence of mens rea to prove aiding and abetting.

Gaybor was convicted of aiding and abetting his co-defendants who brandished firearms during a crime of violence. "[I]n order to be guilty of aiding and abetting under § 924(c), the defendant must have directly facilitated or encouraged the use of the firearm and not simply be aware of its use." *United States v. Nelson*, 137 F.3d 1094, 1103 (9th Cir. 1998), *cert. denied*, 525 U.S. 901 (1998).

At trial, evidence was presented that Gaybor participated in planning for the robbery. (Government's response, p. 5.) He recommended that his co-conspirators carry weapons to make the robbery "believable." *Id.* On the day of the robbery, Gaybor let his co-conspirators into the armored truck when his partner, Hutchinson, was away making a pick-up. *Id.*, p. 9. He then gave his sidearm to Moussa and allowed his co-conspirators to lay in wait for Hutchinson's return. *Id.*, p. 9.

Gaybor encouraged his co-conspirators to use guns to make the robbery easier to execute and conceal his own participation. The evidence presented was sufficient to prove the mens rea for aiding and abetting the brandishing of firearms. Counsel's failure to raise the issue of mens rea was not deficient performance. *See United States v. Nelson*, 137 F.3d 1094, 1103 (9th Cir. 1998) (Where the defendants "specifically discussed and planned the use of the gun," the evidence was sufficient to prove aiding and abetting the use of a firearm in violation of § 924(c).)

Next, Gaybor argues the jury instructions on count two were defective. The instructions read as follows:

> Count 2 of the superseding indictment alleges that defendant Christian Gaybor, did use, carry and brandish firearms, that is, handguns, during and in relation to a crime of violence, that is, interfering with commerce by threats of

---

[2] The court assumes without deciding that this issue is properly before the court. *But see, United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("The court need not consider arguments made for the first time in a reply brief.").

- 5 -

violence as alleged in count 1 of the superseding indictment, a felony prosecutable in a court of the United States. In order for the defendant to be found guilty of count 2 of the superseding indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant committed the crime of interference with commerce by threats and violence as alleged in count 1 of the superseding indictment;

Second, the defendant knowingly brandished a firearm as alleged in count 1 of the superseding indictment, that is a handgun;

Third, the defendant used the firearm during and in relation to the crime alleged in count 1 of the superseding indictment; and

Fourth, the events occurred within the District of Arizona on or about December 5, 2001.

A defendant has "used" a firearm if he actively employed the firearm in relation to the offense of interference with commerce by threats and violence as alleged in count 1 of the superseding indictment. The term "use" includes brandishing the firearm. A defendant takes such action "in relation to the crime"if the firearm facilitated or played a role in the crime.

(Government's response, p. 13.)

Gaybor argues the court erroneously used the phrase "use, *carry* and brandish firearms" to describe the charge in the superseding indictment. Using the term "carry," he maintains, allowed the jury to convict him in count 2 solely based on Moussa's testimony that he carried a rifle into the armored truck. This, he concludes, violated his right to be convicted only if the jury believed he (or Moussa) *brandished* a firearm. He further argues counsel was ineffective for failing to object to this instruction. Gaybor, however, misconstrues the jury instruction.

The instruction states that court 2 of the indictment alleges Gaybor "did use, carry and brandish firearms . . ." The three terms "use, carry and brandish" are used in the conjunctive. Accordingly, this instruction does not permit the jury to find Gaybor guilty of count 2 if he only carried firearms and did not use or brandish them. This instruction requires the jury to find Gaybor committed the crime charged in the indictment only if he used, carried *and* brandished firearms. This jury instruction did not erroneously lower the government's burden of proof. Counsel's performance was not deficient.

Gabor also argues counsel's errors, while not sufficiently egregious individually to warrant relief, cumulatively amounted to reversible error. Gaybor, however, has not identified

- 6 -

any errors in counsel's performance concerning count 2. Accordingly, the doctrine of cumulative error does not warrant relief.

In his second claim for relief, Gaybor maintains the prosecution improperly denied it had offered Moussa a sentence reduction in exchange for his cooperation. He argues counsel was ineffective for failing to raise this issue.

At trial, Moussa testified he agreed to plead guilty to counts 1 and 2, and in exchange, was to receive a significantly lowered sentencing range. In his closing argument, Gaybor's counsel suggested Moussa's testimony should be discounted because he had a motive to please the prosecution. He stated as follows:

> Let's begin with Mr. Michael Moussa. What interest does he have in this case? Well you heard the testimony from Mr. Moussa, he's got 20 years of his life at stake. He got a sweetheart deal. As a result of his cooperation, he will receive between five and eight years. As a further result of his cooperation, it is his understanding that whatever time he gets on the two counts of the indictment, they will run concurrent. That was his understanding. That was the basis of his cooperation.

(Government's response, p. 15.) In its rebuttal argument, the prosecutor made the following statement:

> [A]s the Court advised[3] you, that you should look at Mr. Moussa's testimony more closely. The government doesn't deny that. You're encouraged to do that. Mr. Moussa, obviously in the course of the robbery like all – all of the participants, Mathews and the rest, received money from this robbery. That's what this robbery was about. Mr. Moussa, there's a possibility that Mr. Moussa will receive benefits and that – you've heard the testimony about the possible benefits he'll receive.

(Government's response, p. 16.) After the closing arguments, the trial court gave the jurors the following instruction:

> You have heard testimony that Michael Moussa, a witness, has received favored treatment from the government in connection with this case. You should examine Michael Moussa's testimony with greater caution than that of other witnesses. In evaluating that testimony, you should consider the extent to which it may have been influenced by the receipt of benefits from the government.

(Government's response, p. 16.)

---

[3] The word "advised" may be an error in tense. The prosecutor may have meant to say: "The court will advise you that you should examine Michael Moussa's testimony . . . ."

- 7 -

Gaybor argues the prosecutor's remarks were improper because his statement that "Moussa . . . received money from this robbery" implied that the government let Moussa keep his share of the robbery money in exchange for his cooperation and further implied there was no agreement to give Moussa a reduced sentence. The court does not agree with Gaybor's characterization of the government's rebuttal argument.

The government stated that "Moussa, obviously in the course of the robbery like all – all of the participants, Mathews and the rest, received money from this robbery." This statement addresses Moussa's credibility. It is a concession that Moussa's actions are influenced by the benefits he expects to receive in return. He was willing to rob an armored truck in exchange for a portion of the money it was carrying. He might be willing to shade his testimony in exchange for a lenient sentence.

The prosecutor's statement does not imply that the government allowed Moussa to keep his portion of the stolen money. It does not improperly deny the existence of an agreement between the government and Moussa whereby he would receive a more lenient sentence in exchange for his cooperation. Counsel's failure to object to the government's closing argument was not deficient performance.

In his third claim for relief, Gaybor argues counsel was ineffective for failing to advise him that he could plead guilty without accepting the government's plea agreement. Gaybor maintains he did not accept the government's plea offers because he did not want to cooperate with the government. He asserts, had he known he could plead guilty without agreeing to cooperate with the government as required by the government's plea agreements, he would have done so. The pretrial record, however, does not support Gaybor's claim.

Immediately after Gaybor was arrested, the government offered him special treatment conditioned in part on his agreement to cooperate in the government's efforts to prosecute his co-conspirators. (Government's response, attachment A, Richard A. Castillo, affidavit, ¶ 4) Gaybor rejected this offer. *Id.*

Later, the government gave Gaybor a written plea offer. (Government's response, attachment C., Asst. U.S. Atty. Frederick A. Battista,, affidavit, ¶ 6.) This offer, however, did

not require any cooperation from Gaybor. *Id.* Gaybor, nevertheless rejected this plea agreement. *Id.* Apparently, by this time Moussa had agreed to cooperate, so the government had no need for the cooperation of any of the remaining co-conspirators. *Id.*, ¶ 5.

On the eve of trial, the government offered Gaybor one final plea offer. *Id.*, ¶ 12. Again, this offer did not require Gaybor to cooperate with the government. *Id.*, ¶ 12 By this time, all of Gaybor's co-conspirators had agreed to plead guilty. *Id.*, ¶ 14. Gaybor was the last hold out. *Id.* Accordingly, the government had no need for Gaybor's cooperation. Nevertheless, Gaybor rejected this final plea offer. *Id.*

Gaybor claims he was denied the opportunity to plead guilty because he did not want to cooperate with the government and mistakenly believed he had no other option than to go to trial. This argument, however, only makes sense if the government's plea offer required Gaybor's cooperation. This may have been true immediately after his arrest, but it was not true later when the government dropped its demands that Gaybor cooperate as a plea condition. It certainly was not true on the eve of trial when the government had no need for Gaybor's cooperation. At this point, Gaybor's professed disinclination to cooperate with the government was no barrier to a plea of guilty.

Gaybor cannot show he was prejudiced by counsel's allege failure to explain he could plead guilty without accepting a plea agreement which required he cooperate with the government. Counsel was not ineffective.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order

DENYING the Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. [doc. #266]

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this report and recommendation. If objections are not

timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk is directed to send a copy of this report and recommendation to all parties.

DATED this 8th day of January, 2008.

*Glenda E. Edmonds*
United States Magistrate Judge